IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACQUELINE R. SMITH, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-881 |
| | ) | |
| JOHN E. POTTER, POSTMASTER GENERAL | ) | |
| UNITED STATES POSTAL SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

CONTI, District Judge.

In this memorandum opinion, the court considers the motion for summary judgment (Doc. No. 25) filed by defendant John E. Potter, Postmaster General, United States Postal Service ("defendant" or "Postal Service"), with respect to the only remaining claim asserted by plaintiff Jacqueline R. Smith ("plaintiff") under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000, et seq. ("Title VII"), which is a claim for retaliation.  After considering the joint concise statement of material facts, defendant's motion for summary judgment, and the submissions of the parties, the court will grant summary judgment in favor of defendant by reason of plaintiff's failure to adduce sufficient evidence to support a prima facie case of retaliation.

### *Factual Background and Procedural History*

The factual background is derived from the undisputed evidence of record and the disputed evidence of record viewed in light most favorable to nonmoving party.  Anderson v.

1

Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Plaintiff is an African-American woman.

Complaint ¶ 19; Answer ¶ 19.  At all times relevant to this litigation, plaintiff was an employee

of the Postal Service.  Complaint ¶ 5; Answer ¶ 5.

**I. The Protected Activity, the 2001 EEO Complaint**

On or about January 3, 2001, plaintiff filed EEO complaint 1-C-151-0026-01 ( the "2001

EEO Complaint") alleging that she had been subjected to sexual assault at work when Michele

Rotunda ("Rotunda"), plaintiff's co-worker, grabbed plaintiff on November 15, 2000 while

plaintiff was having a conversation with other employees.  Defendant's Appendix to the Concise

Statement of Material Facts, Exhibit ("Def.'s Ex.") A.

The Postal Service acknowledged and accepted the 2001 Complaint for investigation on

or about January 30, 2001 via an acceptance letter sent to plaintiff.  Joint Statement of Material

Facts ("J.S.") ¶ 2.  On February 11, 2002, the Postal Service (pursuant to 29 C.F.R. § 1614.109

(g)(3)) sent a fifteen-day notice to plaintiff informing her that a decision on the 2001 EEO

complaint would be issued without a hearing.  J.S.¶ 3.  Plaintiff a filed response in opposition to

the issuance of a decision without a hearing and a supplemental affidavit in support of her

opposition.  Id. ¶ 4. Within the supplemental affidavit, plaintiff specifically alleged many of the

retaliatory acts upon which the above-captioned suit is based.  Def.'s Ex. D.

On March 5, 2002, the administrative judge issued an order of judgment in favor of

defendant and on or about March 6, 2002, the administrative judge issued an accompanying

decision finding defendant not liable for the conduct of Rotunda.  J.S. ¶ 8; Def.'s Ex. F.  In the

decision, the administrative judge construed plaintiff's references to retaliation as a request to

amend the existing complaint to include an additional complaint of retaliation.  Id.  The

2

administrative judge denied that request and further advised plaintiff that if plaintiff intended to pursue that claim, plaintiff should seek equal employment opportunity ("EEO") counseling "assuming [plaintiff] had not already done so." Id. In a footnote, the administrative judge stated that "for time computation purposes, the postmark or receipt date of the complainant's prehearing statement by the EEOC should be deemed the date used to determine *if* the Complainant's initial EEO counselor contact were [sic] timely under 29 C.F.R. § 1614.105(b)." Id. at 2 n.2 (citation omitted) (emphasis in original). The decision also included an attached notice describing the appeal process from the final order including the right to file a civil action in federal district court. Id. Plaintiff did not appeal the dismissal of the 2001 Complaint. J.S. ¶ 12.

## II. The Second EEO Complaint

On April 12, 2002, plaintiff requested pretrial counseling for race discrimination and retaliation. Def.'s Ex. G; J.S. ¶ 14. On May 31, 2002, plaintiff filled EEO Complaint 1-C-151-0052-02 (the "2002 EEO Complaint"). In the 2002 EEO Complaint, plaintiff alleged that she had been subjected to retaliation and racial discrimination by co-workers and supervisors. J.S. ¶¶ 15-17. The 2002 EEO Complaint and the incidents described therein provide the basis for this civil lawsuit. In the 2002 EEO Complaint, plaintiff claimed that she was subjected to discriminatory conduct from February 2001 through March 31, 2002 in response to her submission of the 2001 EEO Complaint on January 3, 2001. J.S. ¶¶ 15, 18.

On July 31, 2002, plaintiff submitted to the EEO investigator an EEO investigative report which identified the issues in the 2002 EEO Complaint. J.S. ¶ 19. The issues included the same incidents that were included in plaintiff's affidavit for the pre-complaint counseling. Def.'s Ex.

G.

On March 15, 2004, a final agency decision was issued by the administrative judge dismissing the 2002 EEO Complaint.  Def.'s Ex. K.  The administrative judge concluded that plaintiff failed to state a prima facie case of racial discrimination or retaliation.  Id. at 8.  The decision instructed plaintiff about remedial steps available to her after the final decision including instructions concerning her ability to file a civil action in the appropriate federal district court.  Id.  On June 14, 2004, plaintiff filed the above-captioned civil action.

### III. The Pending Civil Lawsuit

Plaintiff originally filed the above-captioned lawsuit alleging, among other things, retaliatory discrimination in violation of Title VII and discrimination on the basis of race in violation of 42 U.S.C. §1981.  J.S. ¶¶ 24-25.  This court granted defendant's motion to dismiss plaintiff's section 1981 claims based upon plaintiff's consent to the dismissal.  February 2005 Memorandum Order at 4 (Doc. No. 8).  This court also found that plaintiff's claims for sexual discrimination and racial discrimination were time-barred.  Id.  The only remaining claim in this case, therefore, is plaintiff's retaliation claim, which is the subject of defendant's instant motion for summary judgment.

Plaintiff's retaliation claim is based upon the following retaliatory incidents.  On the day after the original alleged sexual assault incident by Rotunda, Bob Ecklund ("Ecklund"), plaintiff's manager, called her into his office, "making [her] walk through the lobby to reach his office which is right across the floor, compound[ing] [her] feeling of intrusion, embarrassment, [and] violation."  J.S. ¶ 81; Brief in Opposition to Summary Judgment, Exhibit ("Pl.'s Ex.") 1 (affidavit).  Plaintiff claimed that Euklund, by making her walk across the lobby and report to his

4

office to discuss the incident, made her "feel degraded as though [she] [had done] something

immoral." J.S. ¶ 80; Pl.'s Ex. 1.  In more detail, plaintiff stated in the investigative affidavit:

> . . . Mr. Ecklund called me in the office, however, he told me to walk
> out through the turnstiles and come in through the lobby and he'll
> open the door that way.  At this time Mr. Ecklund made me feel
> degraded as though I had did [sic] something immoral.  When I
> arrived at the office Mr. Ecklund questioned me on how I felt about
> the situation.  Did I mind if Michelle worked in the tour office?  Did
> I mind working out in the paper section?  Would I mind if Michelle
> would only speak to me in a professional manner[?]  At this time after
> making me walk through the lobby to reach his office, which is right
> across the floor, compounded my feeling of intrusion, embarrassment,
> [and] violation.  I felt pain in my chest and my body began to ache, I
> told him holding back the tears that I can't even talk about it now and
> I didn't know how I felt at this time.

Pl.'s Ex. 1 at 2.

Plaintiff further alleges actions by multiple co-workers and supervisors in support of her

retaliation claim against the Postal Service.  Many of these alleged incidents of retaliation,

however, fail because the co-worker or supervisor in question maintained that he or she had no

knowledge of plaintiff's protected activity and because plaintiff failed to adduce any facts

showing that there is a genuine dispute for trial regarding their knowledge about her protected

activity.

On two occasions in February 2001, for example, plaintiff alleges that John Marker

("Marker"), plaintiff's co-worker, attempted to retaliate against her by almost running her over

with a forklift. J.S. ¶¶ 29-30.  In a sworn, signed statement dated May 12, 2006, Marker denied

attempting to run plaintiff over with a forklift.  Id.¶ 32. Def.'s Ex. L.[1]  Marker further denied in

---

[1]  Contrary to the requirements of by Local Rule 56.1B(1) of the Local Rules of Civil
Procedure for the United States District Court for the Western District of Pennsylvania, plaintiff
cites no evidentiary material of record to provide proof of her allegations against Marker or, more

that statement that he ever attempted to retaliate against her and further denied having knowledge

of plaintiff's previous EEO activity.  Def.'s Ex. L.[2]  In a deposition, plaintiff admitted that any

knowledge that she had about Marker's awareness of her EEO activity was based upon

speculation and not her own personal knowledge:

> Q.   So any knowledge you have about Mr. Marker knowing
>      about your claim against Ms. Rotunda is speculation on
>      your part that he knew because, in your opinion, everybody
>      in the facility knew what everyone else did?
>
> A.   Yes.
>
>      ***
>
> Q.   Well, how you would describe it, your knowledge about
>       what he knew or didn't know?
>
> A.   No, not mine, no.

Def.'s Ex. J at 79-80; J.S. ¶ 34.

Plaintiff also alleges retaliation based upon the failure of Tina Augustine ("Augustine"),

plaintiff's supervisor, to forward plaintiff's request to take December 2, 2001, as a non-scheduled

day off.  J.S. ¶ 35.  Part-time clerks in the Postal Service, including plaintiff at that time, had no

set schedule.  Id. ¶¶ 36-37.  Part-time clerks, however, could request non-scheduled days off.  See

Id.  Plaintiff asserts that Augustine's failure to forward her request was done in retaliation for her

previously protected activity; plaintiff, however, does not provide any evidence of Augustine's

---

importantly, his denial he had knowledge of plaintiff's previous EEO activity.  A nonmoving
party, like plaintiff, must "designate 'specific facts showing that there is a genuine issue for
trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)(quoting FED.R.CIV.PROC. 56(e)).

    [2]See supra n.1.

knowledge of that activity.  Id. ¶¶ 41-42.[3]  On the contrary, plaintiff admitted in a deposition that

her assertion of Augustine's knowledge is based upon an assumption:

> Q.      But is it like your previous testimony, you just assumed that
> she [Augustine] knew?
>
> A.      Exactly.
>
> Q.      But you have no independent knowledge that she did
> know?
>
> A.      I'm sorry.  No, I did not because, you know, they're not
> going to come out and verbally say.

Def.'s Ex. J at 97-98.

Plaintiff also alleges retaliation based upon the actions that occurred on December 3,

2001, when Greg Schwartz ("Schwartz"), the FLMA coordinator, allegedly yelled at plaintiff

while they were discussing a leave issue.  J.S. ¶ 43.  Although plaintiff stated that she *believes*

that Schwartz was aware of her prior EEO complaint and alleges that this encounter was in

retaliation to her EEO complaints, plaintiff admitted in a deposition that she was not sure

whether Schwartz knew about her protected activity:

> Q.      . . . . Do you know whether or not Mr. Swartz [sic] knew
> that you had filed a [sic] EEO complaint against Ms.
> Rotunda at the time this occurred?
>
> A.      He probably did.  I don't know for sure.

Def.'s Ex. J at 122-23.  Schwartz stated that he had no knowledge of the previous complaint

about Rotunda.  Id. ¶¶ 44-6.[4]  In a signed affidavit dated April 22, 2003, Schwartz stated:

---

[3]See supra n.1.

[4]See supra n.1.

7

> I do remember vaguely having a discussion with employee Jacqueline Smith concerning her need to document her absence, however I do not remember yelling at her and demanding documentation "or else." Documentation was required from any employee if it was deemed justified relating to the situation. I did not at that time have any knowledge of the situation concerning Ms. Smith and Michele Rotunda, who to this day I do not know. . . . I was not as I stated earlier, [sic] aware of the complainants [sic] race or prior EEO activity, therefore I had no prior knowledge of any circumstance that would influence my actions. . . .

Def.'s Ex. M.

On December 17, 2003, Angelette Holtman ("Holtman"), plaintiff's supervisor, instructed plaintiff to key for two hours. J.S. ¶ 49. At the time, plaintiff believed the instruction was in violation of her medication restrictions and in retaliation for her 2001 EEO Complaint. J.S. ¶ 49. Holtman denies that she was aware of plaintiff's protected activity at the time of the incident. Id. ¶ 55.[5] In a signed affidavit dated May 2, 2003, Holtman stated "I did not have Ms. Smith working outside of her medical restrictions. I was not aware of [her] prior EEO activity. Race was not a factor in my actions, mail flow was." Def.'s Ex. O at 3. Additionally, plaintiff admits that her medical restrictions required her not to key for more than *four* hours a day and Holtman only asked plaintiff to key for *two* hours that day. Id. ¶¶ 50-51.

Plaintiff also alleges that in January and February 2002, Joseph Buzzell ("Buzzell"), plaintiff's supervisor, tried to have plaintiff removed from her job by claiming she was AWOL. J.S. ¶ 57. Plaintiff also claims Buzzell in particular denied her various requests to change her work schedule. J.S. ¶¶ 77-79. Plaintiff, however, admitted in a deposition that Buzzell denied her requests because of personal animosity. J.S. ¶ 79; Def.'s Ex. J at 145, 174. Buzzell, plaintiff

---

[5] See supra n.1. Plaintiff's beliefs are based on plaintiff's own testimony that Holtman knew about her protected testimony. Id. ¶ 56.

testified, was trying to remove her because he disliked her due to animosity stemming from an

incident in 1994 between plaintiff's husband and Mr. Buzzell's brother:

> Q.    What is it about Joe Buzzell that you believe that he was trying to have you removed from service?
>
> A.    Because he don't like me, and it goes all the way back to when I first started.
>
> Q.    When was that?
>
> A.    In '94.
>
> Q.    He didn't like you back then for what?
>
> A.    It was back then where–when he first–in October, when he verbally harassed me as far as, like, the incident with his brother and my husband being his brother's boss. Ever since then, it was– it's just little things that this man does to– nitpicking that he does to me that I know he was trying to probably remove me from– have me removed from the post office.
>
> Q.    So based upon his dislike for you, it goes back to 1994, you believe that's why he was trying to have you removed and have you found as AWOL?
>
> A.    Yes.

Def.'s Ex. J at 144-45.  Later in her deposition, plaintiff again acknowledged that she believed

Buzzell took actions against her because "he just didn't like [her.]":

> Q.    But in paragraph 22, you're talking about Buzzell?
>
> A.    Yeah.  It was just talking [sic] about a whole different incident in management, period.  It wasn't–
>
> Q.    And are you are telling me that he did this because you filed an EEO Complaint against Michelle Rotunda?
>
> A.    He did it just because he didn't like me.

9

> Q      But that's different than saying that he did it because of
>         Michelle Rotunda?
>
> A.      Of Michelle Rotunda.
>
> Q.      You agree with that?  You have to say "yes" or "no."
>
> A.      Oh, I'm sorry.  Yes.

Id. at 174.

Plaintiff also alleges in support of her retaliation claim that Joseph Imbrogno

("Imbrogno"), plaintiff's co-worker, improperly gave plaintiff ninety-six hours of leave without

pay ("LWOP") rather than injury on duty pay ("COP").  J.S. ¶ 60.  Imbrogo, however, was not

aware of plaintiff's prior EEO activity.  Id.¶ 64.[6]  In a signed affidavit dated April 23, 2003,

Imbrongo stated, "I was aware of the complainants race [sic], I was not aware of any prior EEO

activity.  Her race was not a factor in the interview I conducted with her, only the amount of

leave she was using."  Def.'s Ex. P at 3.  Plaintiff admitted in a deposition that she could not

provide evidence of the retaliatory motive behind Imbrongo's actions:

> Q.      Right.  But in this case, was Joe Inbrongo [sic] doing this
>         because you filed an EEO complaint or because there was a
>         clerical error; do you know?
>
> A.      I don't know.

Def.'s Ex. J at 146.

Plaintiff also claims that James Borland ("Borland"), plaintiff's supervisor,  improperly

charged her with ninety-two units of AWOL.  After plaintiff filed a grievance through the

---

[6]See supra n.1. Plaintiff alleges that Imbrongo's action was in retaliation for Plaintiff's
EEO activity.  Plaintiff, however, did not adduce any evidence to show that Imbrogno was aware
of plaintiff's prior EEO activity and admitted that the incident could have been a clerical error.
J.S. ¶¶ 62-64.

American Postal Workers Union, AFL-CIO, the parties met concerning that dispute and settled it. J.S. ¶¶ 73-75; Def.'s Ex. Q. In addition, Borland denied that he was aware of plaintiff's protected activity. Id. ¶ 76.[7] In a signed affidavit dated April 28, 2003, Borland stated "I was not aware of any prior EEO Activity which [plaintiff] may have had." Def.'s Ex. R at 4.

Plaintiff additionally claims that, in retaliation for her previous EEO activity, management failed to inform her that Rotunda resigned. J.S. ¶ 67.[8] Plaintiff never worked with or around Rotunda after the original November 15, 2000 incident. J.S. ¶ 70.

### *Standard of Review*

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" FED.R.CIV.P.56(c). A motion for summary judgment will not be defeated when there is a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 249.

---

[7]See supra n. 1.

[8]The parties disagree on whether defendant had a legal duty to inform plaintiff about Rotunda's resignation. J.S. ¶¶ 68-69.

The Supreme Court in <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), held:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" <u>Id.</u> at 324.  Such a motion, whether or not supported by affidavits, will be 'made and supported as provided in this rule,' and **Rule 56(e) requires the nonmoving party to go beyond the pleadings and by her own affidavits**, or by the 'depositions, answers to interrogatories, and admissions on file,' **designate 'specific facts showing that there is a genuine issue for trial**.'"

<u>Id.</u> at 324 (quoting Fed.R.Civ.Proc. 56(e))(emphasis added).  There must be sufficient evidence favoring the nonmoving party that a jury could return a verdict for that party.  The non-moving party must prove beyond a "mere scintilla" of evidence that a genuine issue of material fact exists and may not rest on the allegations set forth in its pleadings.  <u>Big Apple BMW v. BMW of N. Am.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).

_____ Moreover, a "party cannot rely upon self-serving conclusions, unsupported by specific facts in the record." <u>LaResca v. AT&T</u>, 161 F.Supp. 2d 323, 327 (D.N.J.2001)(citing <u>Celotex</u>, 477 U.S. at  322-23). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-50 (citations omitted).  Further, Federal Rule of Civil Procedure 56(e) requires that an affidavit in opposition to a motion for summary judgment must be based upon personal knowledge and must establish that those facts will be admissible.  <u>Blain v. Scott Specialty Gases</u>, 283 F.3d 595, 608 (3d Cir. 2002); <u>Maldonado v. Ramirez</u>, 757 F.2d 48, 50 (3d Cir. 1985).

*Discussion*

Defendant moves for summary judgment on two grounds.  First, defendant argues that plaintiff did not exhaust her administrative remedies before initiating this lawsuit.  Second, defendant argues that plaintiff failed to make out a prima facie case of retaliation.  The court will address each argument in turn.

## I. Failure to Exhaust Administrative Remedies

Defendant argues that the court should grant summary judgment on the basis that plaintiff failed to contact an EEO counselor within forty-five days of the alleged discriminatory incidents underlying her retaliation claim as required by 29 C.F.R. § 1614.105(a)(1).  That is, defendant argues that plaintiff did not initiate contact with an EEO counselor until April 12, 2002, more than forty-five days after all but one of the alleged incidents of retaliation, and thus did not exhaust her administrative remedies.

The court finds that plaintiff exhausted the administrative remedies relating to the forty-five day counseling requirement.  The administrative judge in the decision which denied without a hearing plaintiff's initial 2001 Complaint, and her request to amend that complaint to include the alleged retaliation, reset the clock for the forty-five day time period in which plaintiff could seek counseling for the retaliation claim, as allowed under 29 C.F.R. § 1614.105 (a)(2) and plaintiff timely fulfilled that requirement. [9]

---

[9]Plaintiff set forth several arguments in opposition to defendant's administrative exhaustion argument.  First, plaintiff argued that, under the applicable regulations, a complainant may amend a complaint at any time prior to the conclusion of an investigation to include issues or claims related to those in the complaint.  Second, plaintiff argued that plaintiff's retaliation claim should be included within the scope of her original sexual harassment EEO complaint

In order to maintain a suit for discrimination, a plaintiff must establish that he or she has exhausted her administrative remedies.  Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997). Among other requirements, EEO regulations require that federal employees who intend to file a charge of discrimination contact an EEO counselor within forty-five days of the date of the matter alleged to be discriminatory, or in the case of a personnel action, within four days of the effective date of action.  Section 1614.105(a)(1) provides:

> An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

29 C.F.R. § 1614.105 (a)(1).  Initiating counseling under the regulations is an essential requirement for a plaintiff to exhaust properly administrative remedies.  "Exhaustion requires both consultation with an agency counselor and the filing of a. . . complaint within the required times."  Robinson, 107 F.3d at 1021.

The regulations provide, however,  that the 45-day limit may be extended under certain circumstances:

> **The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section** when the individual shows that he or she was not notified of the time limits and was not

_____

because the Postal Service had notice of the alleged retaliatory incidents due to plaintiff's brief in opposition to a decision without a hearing which raised these issues.  Therefore, plaintiff argues the purpose of the administrative exhaustion requirement was satisfied and administrative exhaustion was satisfied.  Third, plaintiff argued that the forty-five day time limit set forth in 29 C.F.R. § 1614.105 (a)(1) is void because it is contrary to the provisions of Title VII, which provides that plaintiffs have 300 days to file charges of discrimination under 42 U.S.C. §§ 2000 (e)-5(e).  In light of the resetting of the forty-five day time period by the administrative judge, these arguments need not be addressed here.

otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, **or for other reasons considered sufficient by the agency or the Commission**.

29 C.F.R. § 1614.105 (a)(2)(emphasis added).[10]

In this case, plaintiff initially filed her 2001 EEO Complaint alleging sexual discrimination on January 3, 2001.  On February 11, 2002, the Postal Service issued a notice to plaintiff informing her that a decision would be rendered without a hearing.  Plaintiff filed an opposition to that notice, requesting a hearing be held.  With that opposition, plaintiff included an affidavit that, for the first time, stated plaintiff's claims for retaliation.  The administrative judge denied plaintiff's opposition and found defendant not liable for claims raised in the 2001 Complaint.

In its decision, the administrative judge characterized plaintiff's inclusion of retaliation allegations in her response as a request to amend her complaint to include a retaliation claim and summarily denied that request:

> I find that Complainant's response to the Notice, which was dated February 27, 2002 and received by this office on February 28, 2002, fails to raise any material factual issues in dispute which would warrant a hearing.  The Complainant's reference in that response to alleged retaliation by co-workers and management for her complaining about conduct she perceived to constitute sexual harassment shall be construed as a request to amend the existing complaint to include a claim of retaliation.  Such a request is DENIED.

---

[10]The regulations require the agency or the Commission "shall" extend the forty-five day time period in certain circumstances.  29 C.F.R. § 1614.105 (a)(2).

15

Def.'s Ex. F at 2.

The administrative judge, however, advised plaintiff that if she intended to pursue the retaliation claim she should seek EEO counseling if she had not already done so.  Id.  The administrative judge effectively extended the date from which the 45-day period began to run:

> For time computation purposes, the postmark or receipt date of the Complainant's Prehearing Statement by the EEOC should be deemed the date used to determine *if* the Complainant's initial EEO counselor contact were [sic] timely under 29 C.F.R. § 1614.105[a].

Def.'s Ex. F at 2 n.3 (emphasis in original)(citations omitted).  Although the administrative judge cited subsection (b) and not subsection (a) of 29 C.F.R. § 1614.105, this court observes that subsection (b) only deals with what is required of counselors during the initial counseling session.  See 29 C.F.R. § 1614.105(b).  The reference to subsection (b) appears to have been a typographical error.  Subsection (a), and not subsection (b), deals with time computation for the purposes of seeking counseling to exhaust administrative remedies.

Plaintiff in fact did receive EEO counseling on April 12, 2002, forty-four days after February 27, 2002, the date of plaintiff's prehearing statement.  After completing counseling, plaintiff timely filed the 2002 EEO complaint.  In the decision dismissing the 2002 EEO Complaint, the administrative judge makes no mention of a failure to exhaust administrative remedies or a failure to receive timely counseling:

> Complainant requested counseling April 12, 2002. After a final interview with an EEO Counselor, a notice of final interview was sent by certified mail on May 22, 2002, and received by complainant on May 23, 2002.  The complainant filed a formal complaint on May 31, 2002, and the investigation was completed on May 20, 2003. . . .

> As evidenced by agency records, the complainant received the file
> and hearing rights on May 21, 2003. . . .

Def.'s Ex. K at 1.  The administrative judge did not refuse to consider plaintiff's 2002 Complaint

for any administrative exhaustion failure.  Instead the administrative judge conducted a full

analysis of the merits of plaintiff's second complaint, ultimately holding that plaintiff had failed

to state a prima facie case.  Def.'s Ex. K at 2-8.  Further, the decision included a description of

plaintiff's appeal rights:  "If you are dissatisfied with this final agency decision, you may file a

civil action in an appropriate U.S. District Court within 90 calender days of your receipt of this

decision."  Def.'s Ex. K at 8.  Nothing in that decision indicated that anyone at the agency had a

problem with the time period in which plaintiff had sought counseling concerning the retaliation

allegations in her 2002 Complaint.

This court, therefore, finds that in the decision dated March 6, 2002, the administrative

judge not only dismissed plaintiff's original EEO complaint and denied a motion to amend it to

include the retaliation allegations, but also extended the time limit for  plaintiff to seek

counseling regarding her new allegation of retaliation as permitted under the relevant federal

regulations.  See 29 C.F.R. § 1614.105(a).  Plaintiff apparently relied on this extension as

demonstrated by her contacting the counselor within the forty-five day time period prescribed by

the administrative judge.  Indeed, she initiated counseling one day before this period ended.

Because plaintiff received counseling within the time period allotted to her and fulfilled other

statutory requirements, and by reason of the agency adjudicating her claim on the merits and not

raising any procedural impediment based upon untimely counseling, the court holds that plaintiff

exhausted administrative remedies with respect to the counseling requirement set forth in the

applicable regulations.

## II.  Failure to State a Prima Facie Case

To establish a prima facie case of retaliation under Title VII, a plaintiff must adduce evidence that: (1) the plaintiff engaged in an activity protected by Title VII; (2) the employer took an adverse employment action against the plaintiff; and (3) there was a causal connection between plaintiff's participation in the protected activity and the adverse employment action. Moore v. City of Philadelphia, 461 F.3d 331, 340 (3d Cir. 2006).  The court will address the propriety of granting summary judgment in favor of defendant by considering each of these required elements.

### a.  Protected Activity

The first prong of a prima facie case requires, at the very least, an informal protest of discriminatory employment practices.  Barber v. CSX Dist. Services, 68 F.3d 694, 701-02 (3d Cir. 1995) (citing Summer v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990)).  The protest, in whatever medium, must specifically relate to the protected conduct allegedly being infringed.  Barber, 68 F.3d at 701.

In this case, plaintiff asserts (and defendant does not dispute) that the filing of two EEO complaints constitutes protected activity.  The second complaint, therefore, is based upon alleged retaliation to the filing of the first complaint dated January 3, 2001, which is the protected activity at issue in this case.  Plaintiff, therefore, has satisfied the first element of this retaliation claim.

18

**b. Adverse Action**

In 2006, the Supreme Court in <u>Burlington Northern & Santa Fe Railway v. White</u>, 126 S.

Ct. 2405, 2415 (2006), clarified what is required to pursue a claim for retaliation for protected

activity, illuminating in particular what is required to meet the second prong of the prima facie

requirements – proof that an employer took an "adverse employment action" against the plaintiff.

<u>Moore</u>, 461 F.3d at 340.  The Court explained that in order to state a retaliation claim, a plaintiff

must show that a "reasonable employee would have found the challenged action materially

adverse, which in this context means it well might have dissuaded a reasonable worker from

making or supporting a charge of discrimination."  <u>Id</u>. at 2415 (internal quotation marks omitted).

The Court carefully distinguished "material adversity" from "trivial harms" and further reiterated

that Title VII does not set forth an American workplace civility code.  <u>Id</u>.

The Court clarified that the material adversity of an action should be determined by an

objective standard.  <u>Id</u>. ("We refer to reactions of a reasonable employee because we believe that

the provision's standard for judging harm must be objective.").  The Court further indicated that

determining whether an action is materially adverse requires a fact-intensive inquiry and an

analysis of the totality of the circumstances.  The appropriate analysis inquires into what would

be an objective person's reaction based upon a particular set of factual circumstances:

> We phrase the standard in general terms because the significance
> of any given act of retaliation will often depend upon the particular
> circumstances.  Context matters.  "The real social impact of
> workplace behavior often depends on a constellation of
> surrounding circumstances, expectations, and relationships which
> are not fully captured by a simple recitation of the words used or
> the physical acts performed."

<u>Id</u>. (quoting <u>Oncale v. Sundowner Offshore Services, Inc.</u>, 523 U.S. 75, 81-82 (1998)).  The

Court provided examples of how certain actions might have a different impact in different contexts, noting that, for example, a schedule change in an employee's schedule which might not make a difference to most employees may matter greatly to a mother with school age children. Id.

In the case at issue, plaintiff claims a total of ten (10) retaliatory acts by various actors. Each retaliatory act involved the action of different individuals and, therefore, warrants separate analysis concerning whether the particular act presents an adverse employment action.  For each action, the plaintiff must adduce evidence that a reasonable objective person would find that action materially adverse to the plaintiff and that the action would have dissuaded a reasonable employee from participating in the protected activity at hand.

The first alleged retaliatory action concerns Ecklund forcing plaintiff to walk through a lobby to meet with him (which this court, drawing all inferences in favor of the plaintiff, infers would have been unusual) and when discussing the original assault, made plaintiff *feel* embarrassed and violated.  Applying the second prong of prima facie analysis to this allegation, even as clarified by Burlington, plaintiff in recounting her impression of this incident has not adduced evidence of an adverse action that a reasonable employee in these circumstances would have found to be materially adverse.  The only factual basis that plaintiff provided is that she had to walk through the lobby into Ecklund's office and Ecklund questioned her on how to resolve the issue and about what work scenario would make plaintiff feel comfortable.  This court finds that no reasonable finder of fact could conclude that a reasonable worker in these circumstances would consider a meeting with a supervisor to be materially adverse or that it would dissuade a reasonable employee from making or supporting a charge of discrimination. Plaintiff's claim is

only supported by her feelings and beliefs which are subjective and not sufficient for summary

judgment.  Celotex, 477 U.S. at 322-23.  Plaintiff did not produce evidence that Ecklund told her

anything or asked her anything that would dissuade a reasonable employee from making a claim

or otherwise participating in the protected activity.  By failing to produce evidence of a materially

adverse action, the plaintiff has failed to demonstrate a prima facie case for this alleged

retaliatory action by Ecklund.

The second retaliatory action involves Marker's alleged attempt to run over plaintiff with

a forklift.  The third retaliatory action deals with plaintiff's request for a day off not being

forwarded by one of her supervisors.  The fourth retaliatory action involves Schwartz allegedly

unreasonably yelling at her because of a leave issue.  The fifth retaliatory action concerns Buzzell

allegedly trying to have plaintiff removed from her job.  The sixth retaliatory action involves

Buzzell purposely not forwarding plaintiff's various requests to change her work schedule.  The

seventh retaliatory action involves Imbrogno allegedly assessing her with leave without pay

rather than injury on duty pay.  Viewing these actions in a light most favorable to plaintiff, the

court concedes that these six actions could be reasonably be perceived as materially adverse

actions and fulfill the requirements of the second prong.

An eighth retaliatory action relates to Borland improperly charging plaintiff with being

AWOL.  Plaintiff, however, admitted that after plaintiff filed a grievance, the parties met and

settled the issue.  Therefore, the court finds that a reasonable trier of fact could not find the action

materially adverse by reason of the grievance being amicably resolved between the parties.

The ninth retaliatory action involves management's failure to inform plaintiff that

Rotunda had resigned.  Plaintiff adduced no evidence that would suggest that this failure

adversely affected plaintiff or that it would adversely affect a reasonable person. Therefore, this court finds that no reasonable trier of face could find that this failure would meet the second prong of the prima facie case.

The tenth and final retaliatory action involves Holtman instructing plaintiff to key for two hours. As discussed previously, this request was not in violation of plaintiff's medical restrictions and, therefore, could not be found by a reasonable trier of face to be an adverse action against the plaintiff. This action does not meet the second prong of a prima facie case.

Plaintiff, therefore, did meet the requirements of a materially adverse action with respect to six of the alleged retaliatory incidents: Marker's alleged attempt to run over plaintiff with a forklift; Augustine allegedly purposefully refusing to forward plaintiff's request for a day off; Schwartz allegedly unreasonably yelling at her because of a leave issue; Buzzell trying to have plaintiff removed from her job; Buzzell allegedly purposefully failing to forward plaintiff's various requests to change her work schedule; and Imbrogno allegedly assessing her with leave without pay rather than injury on duty pay. This court turns to the third prong of a prima facie case of retaliation to determine whether plaintiff adduced sufficient evidence to survive summary judgment.

**c. Causal Link**

Finally, for the third prong of a prima facie case, there must be a causal connection between the protected activity and an action that might dissuade a reasonable worker from making or supporting a charge of discrimination. Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006). Courts have noted that the actor's knowledge of the protected activity is necessary for a plaintiff to succeed in stating a prima facie case. Moore, 461 F.3d at 351 (citing

22

Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989)).  The absence of any evidence indicating

that a decision maker working for the employer had knowledge of a plaintiff's protected activity

may provide a basis to conclude that no causal link exists.  Klimczak v. Shoe Show Cos., 420

F.Supp. 2d 376, 388 (M..D. Pa. 2005) (citing Clark County Sch. Dist. v.  Breeden, 532 U.S. 268,

273 (2001); Jones v. Sch. Dist. of Phila., 198 F.3d 403, 414 (3d Cir. 1999)).

Courts have required that a plaintiff actually demonstrate a causal connection between the

protected activity and the alleged retaliation.  See Hanani v. State of New Jersey Department of

Environmental Protection, 205 Fed.Appx. 71, 78 (3d Cir. 2006)(non-precedential).  In Hanani,

plaintiff was an Egyptian employee and alleged, among other things, discriminatory retaliation

for her submission of an EEOC Complaint of based on national origin discrimination.  Hanani,

205 Fed. App. at 74-75.  The retaliatory allegations included a physical assault and other kinds of

retaliatory harassment such as an increased workload.  Id.  The plaintiff had not produced any

evidence that the retaliatory actor had knowledge of her protected activity and had not presented

any evidence beyond her allegations of a causal connection and, therefore, did not meet the

required standard.  Id. at 78.

In the instant case, as set forth above, the court found that six of the ten alleged retaliatory

activities met the second prong of the prima facie standard because they could be seen to be

materially adverse by a reasonable person under the circumstances.  These claims now need to be

assessed to determine whether plaintiff demonstrated or can demonstrate a causal link between

her protected activity and the adverse actions alleged in these claims. With respect to the claims

involving Buzzell allegedly trying to remove plaintiff from her job and allegedly not forwarding

plaintiff's requests to change her work schedule, plaintiff admitted that these activities were

caused by his personal dislike and animosity toward her stemming from an incident years before her protected activity and wholly unrelated to the protected activity.  This admission and the lack of evidence offered by plaintiff suggesting that Buzzell's actions were in any way motivated by retaliatory intent require the finding that no reasonable fact finder could identify a causal link between Buzzell's actions and plaintiff's protected activity.

With regard to the other four alleged retaliatory actions, even though plaintiff states that she believes that the alleged retaliators had knowledge of her protected activity, she has not adduced any evidence to support her belief that they had knowledge of her EEO complaints. Plaintiff simply disputes the denials by defendant and the persons alleged to be the retaliators that they had knowledge of the protected activity.  "[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." Orenge v. Veneman, 218 F.Supp.2d 758, 765 (D.Md. 2002) (quoting Williams v. Cerberonics, Inc., 871 F.2d 452, 456 (4th Cir. 1989)(citing Gairola v. Virginia Dep't of Gen. Servs., 753 F.2d 1281, 1288 (4th Cir.1985))).

The court, therefore, finds that plaintiff did not adduce evidence to support a prima facie case for any of the retaliation incidents.  Because no reasonable trier of fact could return a verdict in favor of plaintiff with respect to her retaliation claim, the court does not need to apply the McDonnell Douglas burden shifting framework.  See Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994)(discussing in detail the standard for deciding summary judgment in Title VII cases).

### *Conclusion*

Upon consideration of the submissions of the parties and upon reviewing the record in the light most favorable to plaintiff, the nonmoving party, the court determines that defendant's motion for summary judgment will be granted with respect to plaintiff's claim asserted under Title VII for retaliation.

### *Order*

AND NOW, this 26th day of March, 2007, upon consideration of the parties' arguments and supporting documents, IT IS HEREBY ORDERED that defendant's motion for summary judgment (Doc. No.25) is GRANTED.  The clerk is directed to mark this case closed.

By the court:

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

cc: Counsel of Record